UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO,<br>CDCR #AH-1995,<br><br>                                    Plaintiff,<br><br>JONES; SIHOTANG; DR. MARTIN<br>SANTILLAN; CDCR,<br><br>                                    Defendants. | Case No.:  3:20-cv-0228-LAB-RBM<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [Doc. No. 2]**<br><br>**AND**<br><br>**2) DISMISSING CLAIMS AND DEFENDANTS FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

Raul Arellano ("Plaintiff"), currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California, and proceeding pro se, filed a civil rights complaint ("Compl.") pursuant to 42 U.S.C. § 1983.  *See* Doc. No. 1. In addition, Plaintiff has submitted a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* Doc. No. 2.

/ / /

1

## I.     Plaintiff's Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards

---

[1]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a prison certificate authorized by an RJD accounting officer. *See* Doc. No. 3 at 1; 28 U.S.C. § 1915(a)(2); S.D. CAL. CIVLR 3.2; *Andrews*, 398 F.3d at 1119. This certificate attests that Plaintiff carried an average monthly balance of $3.89 and had average monthly deposits of $3.34 to his account over the 6-month period immediately preceding the filing of his Motion. At the time of filing, Plaintiff had only an available balance of $0.05. *See* Doc. No. 3 at 1. Thus, the Court GRANTS Plaintiff's Motion to Proceed IFP (Doc. No. 2) and assesses his initial partial filing fee to be $0.78 pursuant to 28 U.S.C. § 1915(b)(1).

However, the Court will direct the Secretary of the CDCR, or his designee, to collect this initial fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants

who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B.    Plaintiff's Allegations

In January of 2016, Plaintiff began a medication called Depakote to treat his seizures, as well as a "neuropathy medication Gabapentin." (Compl. at 4.) Plaintiff claims this combination of medications was effective in treating his seizures and

"neuropathy pain." (*Id.*)  Plaintiff claims that "all his bad symptoms" began to appear when Doctor Guldseth[2] reduced Plaintiff's Gabapentin. (*See id.*)

On June 5, 2019, Plaintiff went "into emergency status" and was seen by Dr. Martin.  (*Id.*)  Plaintiff informed Dr. Martin that he "had a seizure and fell." (*Id.*)  He further informed Dr. Martin that he suffers from back and neck pain that "feels like snake bites" and his "pain is a level 10."  (*Id.*)

Plaintiff also alleges that he informed Dr. Martin that his "pain is interfering with breathing, causing shortness of breath, night sweats depriving [him] of sleep," weakness in his legs, and a "burning sensation." (*Id.*)  However, Plaintiff claims Dr. Martin called him a "liar." (*Id.*)  Plaintiff alleges Dr. Martin "forcefully twisted" his neck "left and right" even after he had informed Dr. Martin that he could not move his neck due to pain. (*Id.*)  Plaintiff told Dr. Martin to "stop because it was painful." (*Id.*)  Plaintiff claims Dr. Martin called him a "Mexican prisoner and a drug addict just like all the other ones." (*Id.*)  He further purportedly told Plaintiff that "all [Plaintiff] wants is drugs." (*Id.*)

Plaintiff later viewed his medical report on August 15, 2019 and noted that Dr. Martin "omitted everything [Plaintiff] told him that [he] was suffering from." (*Id.* at 5.) Plaintiff claims Dr. Martin "lied so he [could] justify why he sent [Plaintiff] back home without treatment." (*Id.*)  When Plaintiff later saw his personal physician, he was told by this doctor that "he saw nothing that would cause concern" based on "Dr. Martin's report." (*Id.*)  Plaintiff claims this caused his personal physician to not give him "proper medication," as well as "inject[ing] the word malingering in his medical file." (*Id.*)

Plaintiff claims that Dr. Martin's failure to treat him caused him to suffer seizures which led to "falls and extreme pain." (*Id.*)

On June 11, 2019 Plaintiff went to the "medical office" and told Nurse Jones that he had recently been taken off his "seizure and neuropathy pain medication." (*Id.* at 7.)

---

[2] Dr. Guldseth is not a named Defendant.

Plaintiff further informed Jones that he recently had a seizure which led to "increase[ed] pain" at Plaintiff's "previous injury spots." (*Id.*) He also indicated that the seizures caused him to "fall backward" which led to more "nerve damage." (*Id.*) Plaintiff claims he told Jones that he had pain "severe enough similar to snake bites, need poking" and he was suffering from chest pain. (*Id.*)

Plaintiff told Jones he needed to "go to TTA so [he] can see a doctor and get proper treatment for [his] symptoms." (*Id.*) However, Plaintiff's request was denied, and he was "sent back" to his cell. (*Id.*) "Hours after their denial," Plaintiff had a seizure. (*Id.*)

On June 26, 2019, Plaintiff told Jones that he woke up to a seizure "in intense pain" in his chest. (*Id.*) Plaintiff claims he described his chest pain to Jones as feeling like "broken rib stabbing" the area of his chest near his heart. (*Id.*) He also told Jones that Dr. Guldseth had previously told him to go to the "TTA to get a prolactin blood drawn right after a seizure." (*Id.*) However, Plaintiff alleges Jones "interfere[ed] and denied [him] access to medical attention." (*Id.*) Plaintiff claims Jones told him to go back to his cell or "otherwise get a disciplinary action." (*Id.*)

On July 14, 2019, Plaintiff "went to window of pill line." (*Id.* at 9.) Plaintiff told LVN Santillan that his chest pain was "so severe that it was interfering with [his] breathing." (*Id.*) Plaintiff further informed Santillan that he needed "immediate medical care" and requested to see a doctor to get "proper course of treatment for symptoms." (*Id.*) However, Santillan purportedly told Plaintiff that he was "bullshitting" and to "go away from his window." (*Id.*) Plaintiff went to Officer Plaza[3] to seek medical attention but Santillan told Officer Plaza that Plaintiff was "bullshitting" and did not require medical attention. (*Id.*) Officer Plaza told Plaintiff to go back to his cell because

---

[3] Officer Plaza is not a named Defendant.

"medical would not help [him]" and he could do nothing other than to send Plaintiff "back to [his] cell or get a disciplinary action." (*Id.*)

C.    Personal Causation

As an initial matter, the Court finds that Plaintiff has failed to state a claim against Defendant Sihotang. There are no specific factual allegations as to this Defendant in the body of the Complaint.

"Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least me degree of particularity overt acts which defendants engaged in" in order to state a claim). Thus, in order to avoid the respondeat superior bar, Plaintiff must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, including personal acts by each individual defendant which show a direct causal connection to a violation of specific constitutional rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable under Section 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted).

Plaintiff's Complaint sets forth no facts which might be liberally construed to support any individualized constitutional claim against Defendant Sihotang. Therefore, the Court finds sua sponte dismissal of Defendant Sihotang is required pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See Lopez*, 203 F.3d at 1126–27; *Wilhelm*, 680 F.3d at 1121.

/ / /

7

///

### D. CDCR

Second, to the extent Plaintiff wishes to impose liability on state departments or agencies like the CDCR, it is immune from suit under the Eleventh Amendment. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); § 1915A(b)(2); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (holding that prisoner's Eighth Amendment claims against CDCR for damages and injunctive relief were barred by Eleventh Amendment immunity); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (Eleventh Amendment immunity extends to state agencies); *see also Cooksey v. California Corr. Health Care Servs.*, No. 2:16-CV-1282-JAM-EFB P, 2017 WL 1495164, at *3 (E.D. Cal. Apr. 26, 2017) (dismissing claims alleged against Defendant CDCR sua sponte pursuant to 28 U.S.C. § 1915A as barred by the Eleventh Amendment).

For these reasons, the Court dismisses Defendant CDCR as a party to this action sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); *Lopez*, 203 F.3d at 1126-27; *Wilhelm*, 680 F.3d at 1121.

### E. Eighth Amendment claims

Finally, as to Plaintiff's allegations against Jones, Martin, and Santillan, however, the Court finds his Complaint contains plausible Eighth Amendment inadequate medical care claims sufficient to survive the "low threshold" set to withstand the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (failure to protect claims under the Eighth Amendment require a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety."); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (to maintain an Eighth Amendment claim based on medical care in prison, a prisoner must show deliberate indifference to his serious medical needs) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (quotation marks

omitted).

///

       F.    <u>Leave to Amend</u>

Because the Court has determined that some of Plaintiff's claims survive the sua sponte screening process, the Court will give Plaintiff the opportunity to either: (1) notify the Court of the intent to proceed with his Eighth Amendment claims against Jones, Martin, and Santillan; or (2) file an amended pleading correcting all the deficiencies of pleading identified by the Court in this Order. Plaintiff must choose one of these options within forty-five (45) days from the date this Order is filed. If Plaintiff chooses to proceed as to his claims against Jones, Martin, and Santillan only, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendants Jones, Martin, and Santillan and dismiss the remaining claims and defendants.

## III.    Conclusion and Orders

For the reasons explained, the Court:

1.    **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. No. 2).

2.    **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $0.78 initial filing fee assessed, if those funds are available at the time this Order is executed, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4.     The Court **DISMISSES** all claims against Defendants Sihotang and CDCR for failing to state a claim and for seeking money damages against immune defendants pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

5.     The Court **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) Notify the Court of the intention to proceed with the claims against Jones, Martin, and Santillan only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

**IT IS SO ORDERED**.

Dated: March 30, 2020

_Larry A. Burns_
Hon. Larry Alan Burns, Chief Judge
United States District Court