UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO, CDCR #AH-1995,<br><br>                          Plaintiff,<br><br>JONES; SIHOTANG; DR. MARTIN; SANTILLAN; CDCR,<br><br>                          Defendants. | Case No.: 3:20-cv-0228-LAB-RBM<br><br>**ORDER DIRECTING USMS TO EFFECT SERVICE OF FIRST AMENDED COMPLAINT** |

## I. Procedural History

On February 6, 2020, Raul Arellano ("Plaintiff"), currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California, and proceeding pro se, filed a civil rights complaint ("Compl.") pursuant to 42 U.S.C. § 1983. *See* Doc. No. 1. In addition, Plaintiff submitted a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* Doc. No. 2.

The Court GRANTED Plaintiff's Motion to Proceed IFP on March 30, 2020. *See* Doc. No. 5 at 9. In addition, the Court DISMISSED all claims against Defendants Sihotang and CDCR on the grounds that Plaintiff failed to state a claim against them and sought money damages against immune defendants pursuant to 28 U.S.C. § 1915(e)(2) AND 28

1

U.S.C. § 1915A(b). *Id.* at 10. The Court did find that Plaintiff had adequately stated an Eighth Amendment claim against Defendants Jones, Martin, and Santillan. *Id.* at 9. Plaintiff was given the option to either file an amended pleading correcting the deficiencies of pleading identified in the Court's Order or proceed as to the claims against Defendants Jones, Martin, and Santillan only. *Id.* at 10. On May 1, 2020, Plaintiff filed his First Amended Complaint ("FAC"). *See* Doc. No. 6.

**II.     Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

     A.     <u>Standard of Review</u>

As the Court previously informed Plaintiff, because Plaintiff is a prisoner and is proceeding IFP, his FAC also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B.   Plaintiff's Allegations

In January of 2016, Plaintiff began a medication called Depakote to treat his seizures, as well as a "neuropathy medication Gabapentin." (FAC at 4.) Plaintiff claims this combination of medications was effective in treating his seizures and "neuropathy pain." (*Id.*) Plaintiff claims that "all his bad symptoms" began to appear when Doctor Guldseth[1] reduced Plaintiff's Gabapentin. (*See id.*)

On June 5, 2019, Plaintiff went "into emergency status" and was seen by Dr. Martin. (*Id.*) Plaintiff informed Dr. Martin that he "had a seizure and fell." (*Id.*) He further informed Dr. Martin that he suffers from back and neck pain that "feels like snake bites" and his "pain is a level 10." (*Id.*)

Plaintiff also alleges that he informed Dr. Martin that his "pain is interfering with breathing, causing shortness of breath, night sweats depriving [him] of sleep," weakness in his legs, and a "burning sensation." (*Id.*) However, Plaintiff claims Dr. Martin called him a "liar." (*Id.*) Plaintiff alleges Dr. Martin "forcefully twisted" his neck "left and right" even after he had informed Dr. Martin that he could not move his neck due to pain. (*Id.*) Plaintiff told Dr. Martin to "stop because it was painful." (*Id.*) Plaintiff claims Dr. Martin called him a "Mexican prisoner and a drug addict just like all the other ones." (*Id.*) He further purportedly told Plaintiff that "all [Plaintiff] wants is drugs." (*Id.*)

---

[1] Dr. Guldseth is not a named Defendant.

3

Plaintiff later viewed his medical report on August 15, 2019 and noted that Dr. Martin "omitted everything [Plaintiff] told him that [he] was suffering from." (*Id.* at 5.) Plaintiff claims Dr. Martin "lied so he [could] justify why he sent [Plaintiff] back home without treatment." (*Id.*) When Plaintiff later saw his personal physician, he was told by this doctor that "he saw nothing that would cause concern" based on "Dr. Martin's report." (*Id.*) Plaintiff claims this caused his personal physician to not give him "proper medication," as well as "inject[ing] the word malingering in his medical file." (*Id.*)

Plaintiff claims that Dr. Martin's failure to treat him caused him to suffer seizures which led to "falls and extreme pain." (*Id.*)

On June 11, 2019 Plaintiff went to the "medical office" and told Nurse Jones that he had recently been taken off his "seizure and neuropathy pain medication." (*Id.* at 7.) Plaintiff further informed Jones that he recently had a seizure which led to "increase[ed] pain" at Plaintiff's "previous injury spots." (*Id.*) He also indicated that the seizures caused him to "fall backward" which led to more "nerve damage." (*Id.*) Plaintiff claims he told Jones that he had pain "severe enough similar to snake bites, need poking" and he was suffering from chest pain. (*Id.*)

Plaintiff told Jones he needed to "go to TTA so [he] can see a doctor and get proper treatment for [his] symptoms." (*Id.*) However, Plaintiff's request was denied, and he was "sent back" to his cell. (*Id.*) "Hours after their denial," Plaintiff had a seizure. (*Id.*)

On June 26, 2019, Plaintiff told Jones that he woke up to a seizure "in intense pain" in his chest. (*Id.*) Plaintiff claims he described his chest pain to Jones as feeling like "broken rib stabbing" the area of his chest near his heart. (*Id.*) He also told Jones that Dr. Guldseth had previously told him to go to the "TTA to get a prolactin blood drawn right after a seizure." (*Id.*) However, Plaintiff alleges Jones "interfere[d] and denied [him] access to medical attention." (*Id.*) Plaintiff claims Jones told him to go back to his cell or "otherwise get a disciplinary action." (*Id.*)

/ / /

4

On July 14, 2019, Plaintiff "went to window of pill line." (*Id.* at 9.) Plaintiff told LVN Santillan that his chest pain was "so severe that it was interfering with [his] breathing." (*Id.*) Plaintiff further informed Santillan that he needed "immediate medical care" and requested to see a doctor to get "proper course of treatment for symptoms." (*Id.*) However, Santillan purportedly told Plaintiff that he was "bullshitting" and to "go away from his window." (*Id.*) Plaintiff went to Officer Plaza[2] to seek medical attention but Santillan told Officer Plaza that Plaintiff was "bullshitting" and did not require medical attention. (*Id.*) Officer Plaza told Plaintiff to go back to his cell because "medical would not help [him]" and he could do nothing other than to send Plaintiff "back to [his] cell or get a disciplinary action." (*Id.*)

On June 11, 2019, Plaintiff "went to medical office where inmates pick up medication daily." (*Id.* at 11.) Plaintiff told LVN Sihotang that he had "recently got taken off [his] seizure medication" and as a result, he was suffering "severe pain" and "uncontrol[lable] seizures." (*Id.*) Plaintiff also informed Sihotang that he had recently had a "partial seizure" in his cell that caused him to fall. (*Id.*) Plaintiff "woke up on [the] floor with lots of pain" in areas where he had "suffered previous injuries due to seizures." (*Id.*) Plaintiff "explained that the pain is severe." (*Id.*)

Plaintiff "told Sihotang that he needs to call an ambulance so [Plaintiff] can see a doctor right away." (*Id.*) However, "Sihotang, together with Jones, den[ied] [his] request" and sent Plaintiff back to his cell. (*Id.*) They told Plaintiff if they called an ambulance it "was going to delay their home on time." (*Id.*)

After Plaintiff returned to his cell, he suffered a seizure, fell, and hurt his "back and elbow." (*Id.*) Plaintiff claims he suffered "severe pain" in his back following the fall. (*Id.*)

Plaintiff seeks injunctive relief, punitive damages, and compensatory damages for "pain and emotional distress." (*Id.* at 16.)

---

[2] Officer Plaza is not a named Defendant.

5

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

As the Court previously informed Plaintiff, Plaintiff is a prisoner and is proceeding IFP, his FAC also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned,

/ / /

6

the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Here, the Court finds that Plaintiff's FAC contains plausible Eighth Amendment inadequate medical care claims sufficient to survive the "low threshold" set to withstand the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (failure to protect claims under the Eighth Amendment require a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety."); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (to maintain an Eighth Amendment claim based on medical care in prison, a prisoner must show deliberate indifference to his serious medical needs) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (quotation marks omitted).

The CDCR is typically not liable for any injury to a prisoner unless a statutory exception applies. *See* California Government Code § 844.6. An exception to this rule may apply to this matter to the extent that Plaintiff is seeking to hold the CDCR liable based on claims that CDCR employees allegedly knew of Plaintiff need for immediate medical care and failed to take action to summon such care. *See* California Government Code § 845.6.

Therefore, the Court shall order U.S. Marshal service on Plaintiff's behalf. *See Lopez*, 203 F.3d at 1126-27; 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); FED.R.CIV.P. 4(c)(3) (providing that "service be effected by a United States marshal, deputy United States marshal, or other officer specially appointed by the court . . . when the plaintiff is authorized to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.").

**III.   Conclusion and Order**

Good cause appearing, **IT IS HEREBY ORDERED**:

1.   The Clerk shall issue a summons upon all Defendants, and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for the Defendant. In addition, the

Clerk shall provide Plaintiff with a copy of the March 30, 2020 Order, and a copy of his FAC and summons for purposes of serving the Defendant. Upon receipt of this "IFP Package," Plaintiff is directed to complete the USM Form 285s as completely and accurately as possible, and to return them to the United States Marshal according to the instructions provided by the Clerk in the letter accompanying his IFP package. Thereafter, the U.S. Marshal shall serve a copy of the FAC and summons upon both the Defendant and the United States as directed by Plaintiff on the USM Form 285s. All costs of service shall be advanced by the United States.

2. Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading or other document submitted for consideration of the Court. Plaintiff shall include with the original paper to be filed with the Clerk of the Court a certificate stating the manner in which a true and correct copy of any document was served on Defendants, or counsel for Defendants, and the date of service. Any paper received by the Court which has not been filed with the Clerk or which fails to include a Certificate of Service will be disregarded.

3. The U.S. Marshal is ordered to serve a copy of the FAC and summons upon Defendants as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(3); and

4. The Plaintiff is ordered, after service has been effected by the U.S. Marshal, to serve upon Defendants or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to FED. R. CIV. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or Defendants' counsel, and the date of that service. *See* S.D. CAL. CIVLR 5.2.

///

Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendant, may be disregarded.

**IT IS SO ORDERED**.

Dated: July 6, 2020

*Larry A. Burns*
Hon. Larry Alan Burns
Chief United States District Judge